**Dessie J. GUNDY, Appellant,**

v.

**Daryl PAULEY, Appellee.**

Court of Appeals of Kentucky.

Aug. 21, 1981.

Jack E. Farley, Public Advocate, William M. Radigan, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Frankfort, David Marye, Asst. Commonwealth Atty., Lexington, for appellee.

Before WILHOIT, McDONALD and VANCE, JJ.

VANCE, Judge.

The question is whether a person involuntarily admitted to a state mental hospital for treatment, but who has not been adjudicated to be an incompetent person, may be required to submit, against his will, to electroshock therapy?

The trial court ordered appellant to submit to electroshock therapy upon testimony that such therapy provided the patient with the optimal opportunity to benefit from treatment at the hospital and would be in the best interest of the patient. The patient had refused to submit voluntarily to the therapy.

The issue presented here has been considerably narrowed by appellant's concession at oral argument that the opinion be limited to the question of the right to administer involuntarily electroshock treatment to patients who refuse to submit to it voluntarily and who have not been declared incompetent.

KRS 202A.180 provides that the Secretary of the Department for Human Resources shall adopt rules and regulations for the enforcement of the chapter, such rules and regulations to include, but not be limited to:

    \*    \*    \*    \*    \*    \*

(7) rights of patients to refuse intrusive treatments, including electroshock therapy or psychosurgery; . . .

Pursuant to the statute the following regulation was adopted:

Section 8. Right to refuse intrusive treatment. All patients shall have the right to refuse intrusive treatments including electroshock therapy or psychosurgery, subject to the following limitations:

(1) Any patients committed on an involuntary basis or who are minors may be provided electroshock therapy or psychosurgery pursuant to a court order with a determination that such treatment is in the best interest of the patient as providing him the optimal opportunity to reasonably benefit from care and treatment in the hospital or residential treatment center. . . . 902 KAR 12:020 § 8.

The appellant contends that the administrative regulation, insofar as it places limitations upon the right of a patient to refuse electroshock therapy, exceeds the authority granted by the statute because the statute confers an absolute right to a patient to refuse such treatment. It is also contended that required submission to such treatment is unconstitutional.

This is a matter of first impression in Kentucky, but it has received attention in a number of other states. Generally, it has been held that a person has a constitutionally protected right to decide for himself whether to submit to serious and potentially harmful medical treatment. *Rennie v. Klein*, 462 F.Supp. 1131 (D.C.N.J.1978); *Rogers v. Okin*, 634 F.2d 650 (1st Cir., 1980); *In re K.K.B.*, 609 P.2d 747 (Okl., 1980).

The right to refuse such treatment is not absolute, however, but is subject to the police power of a state to control persons who are an immediate danger to others and to the interest of the state under the parens patriae doctrine in caring for persons who are incompetent or unable to care for themselves.

It is conceded here that appellant does not constitute an immediate threat to others or to herself and that she has not been declared incompetent.

We hold that in the absence of a judicial declaration of incompetence, or an emergency which poses an immediate danger of harm to others or to the patient, a patient who has been involuntarily committed to a mental hospital for treatment cannot be compelled to undergo electroshock therapy against his will simply because it is con-

sidered to be in the best interest of the patient.

Electroshock therapy has been shown to be effective in approximately 80% of the cases in which it was used. It induces an epileptic seizure which affects the electrical pattern of the brain cells, but medical science has no definitive explanation of how or why it works in 80% of the cases or fails in the other 20%. It has potentially harmful side effects.

Under these circumstances the constitution protects the right of a person, who is not otherwise incompetent to do so, to decide for himself whether to submit to electroshock therapy.

The judgment is reversed.

WILHOIT, J., concurs.

McDONALD, J., concurs by Separate Opinion.

McDONALD, Judge, concurring:

I totally agree with the majority opinion. I write separately to add emphasis to the majority's position. The usefulness of electric-convulsive therapy (ECT) in treating certain types of psychological disorders has been demonstrated, and in recent years, the techniques of administration have been refined so as to avoid some of the horrors associated with earlier treatments. Nevertheless, due to the intrusive nature of ECT, this is one procedure which courts should not order to be performed against the will of a patient under the circumstances presented here.

Lack of consent may be overridden by court order for the taking of blood samples, emptying the contents of the stomach, giving blood transfusions and for performing lifesaving surgery. Whether implicitly or explicitly, the courts in these situations weigh the physical harm to the person against the benefit to be gained by society or the patient by the medical procedure. For example, the needle prick for drawing blood is a slight intrusion and evidence of drugs or intoxicants in the bloodstream will dissipate quickly; therefore, on the basis of relative burden and benefit, the courts have

ordered the procedure over the person's objection. The greater the intrusion and assault on the person, however, the greater must be the countervailing need for the procedure. Otherwise, the consent of the person will be required.

To gain a clearer understanding of ECT, I have consulted a recognized medical school text on the topic. 3 Kaplan, Freedman and Sadock eds., *Comprehensive Textbook of Psychiatry*, Chapter 31.5 (1980). I can envision no greater insult to the person as a whole than the involuntary administration of ECT when the patient is neither suicidal nor dangerous to others. As a preliminary measure, premedication by barbiturates and muscle relaxants is used to prevent fractures which occur frequently in the dorsal spine, humerus and femur due to the severe muscular contraction during the convulsion. Then, via electrodes placed at the temples, the patient receives 70–130 volts of electrical current for .1–.5 seconds. He undergoes a loss of consciousness, followed by a convulsion lasting nearly a minute. After the convulsion, oxygen must be applied until the patient resumes breathing on his own.

Although the patient soon regains consciousness, the first half hour is usually clouded. Frequently, he suffers from headache, nausea, and neck and jaw pains. Other common side effects include confusion and memory impairment for up to several weeks after the treatment. There may be associated cardiovascular and pulmonary complications from the anesthesia. The patient often manifests overall dulling of the emotions. Another common reaction is an overwhelming fear and dread of the treatment. Researchers claim that it is the panic from the temporary confusion and amnesia immediately following the treatment, not fear of the actual procedures, which causes this aversion. Perhaps researchers would say that the appellant merely exhibits one of the predictable side effects of the treatment.

I cannot take the risk of making such a judgment. Nor can I conclude that the

treatment facility's interest in efficiency and convenience outweighs an individual's right to refuse a medical procedure which is potentially harmful and certainly disruptive of both body and psyche. There is no doubt in my mind that the individual's right to the integrity of his person must prevail. Absent appellant's consent or a showing of a risk of harm to self or others, a court should not order the treatment.