Request of the Senate
No. 83-239

## Opinion of the Justices

August 24, 1983

The following resolution, Senate Resolution No. 14, requesting an opinion of the justices was adopted by the Senate on June 1, 1983, and filed in this court on June 6, 1983:

"Whereas, House Bill 821 is pending before the Senate; and

"Whereas, an amendment has been proposed to House Bill 821 which would authorize the administration of certain types of medical and psychiatric treatment during the initial 10-day period following the certification for involuntary emergency hospitalization and only after a finding of probable cause for involuntary emergency hospitalization by the district court when a physician reasonably believes that such treatment will tend to promote the physical and mental health of a patient, and when the patient, because of physical or mental illness, would be unable to make an informed decision with respect to the medical or psychiatric treatment offered

and a reasonable person would consent to the administration of such treatment; and

"Whereas, an emergency situation exists by virtue of a finding of probable cause for the involuntary emergency hospitalization pursuant to RSA 135-B:23; and

"Whereas, a person subject to involuntary emergency hospitalization is suffering from mental illness, and, by definition, has a substantial impairment of emotional processes, or of the ability to perceive reality or to reason, which impairment is manifested by instances of extremely abnormal behavior or extremely faulty perceptions; and

"Whereas, the state department of health and welfare, division of mental health and developmental services, has provided by rule a procedure for protecting the rights of patients who would be subject to emergency treatment under House Bill 821 and the proposed amendment; and

"Whereas, House Bill 821 and the proposed amendment raise certain constitutional questions involving a balancing of the patient's right to refuse emergency and psychiatric treatment and the state's *parens patriae* powers to provide emergency medical and psychiatric treatment to its citizens who are unable to care for themselves; now, therefore, be it

"Resolved by the Senate:

"That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions:

"1. Do House Bill 821 and the proposed amendment violate the patient's due process right to privacy, bodily integrity or personal security?

"2. If the answer to question 1 is in the negative, are the provisions of House Bill 821 and the proposed amendment otherwise unconstitutional?

"Be it further resolved that the clerk of the Senate transmit 7 copies of this resolution to the Justices of the Supreme Court along with an equal number of copies of House Bill 821 and the proposed amendment to House Bill 821."

The following reply was returned:

*To the Honorable Senate:*

The undersigned Justices of the Supreme Court reply as follows to your request filed in this court on June 6, 1983.

The proposed legislation would amend RSA chapters 135 and 135-B by allowing the administration of compulsory medication, under certain conditions, to mental patients who are committed for temporary "involuntary emergency hospitalization" pursuant to RSA 135-B:19 to :25 (Supp. 1981). The provision would supplement the existing statutory guidelines governing emergency treatment of all mental patients. *See* RSA 135:21-b (Supp. 1981). In order to place the bill in proper context, we will first outline the current statutory procedures for involuntary emergency hospitalization and treatment.

Under RSA 135-B:20 (Supp. 1981), a justice of the peace may order an individual to undergo a mental examination after receiving a sworn petition and complaint from a third party. The individual may be committed for involuntary emergency hospitalization immediately after such an examination if the examining physician certifies that the individual is "in such mental condition as a result of mental illness as to pose a strong likelihood of harm to himself or others." RSA 135-B:19, :20 (Supp. 1981). The person hospitalized has a right to a hearing before the district court within three days of his hospitalization to determine whether probable cause exists for the involuntary emergency hospitalization. RSA 135-B:23 (Supp. 1981). The hospitalization may be continued only upon an affirmative finding of probable cause, *id.*, and it may not exceed a period of ten days, unless during this period a petition is filed requesting a judicial hearing on extended involuntary commitment. RSA 135-B:24 (Supp. 1981); *see* RSA 135-B:26 to :41.

The current statutory scheme permits a physician to administer a recognized and approved form of medical or psychiatric treatment to an involuntarily hospitalized patient if he reasonably believes that the treatment will tend to promote the physical and mental health of the patient, and when the following four conditions are satisfied: (1) the physician reasonably believes that a "medical or psychiatric emergency" exists; (2) the patient is unable to understand the need for treatment because of mental retardation or illness; (3) no person who is legally responsible for the patient can be consulted or appointed; and (4) a reasonable person would consent to the treatment. RSA 135:21-b (Supp. 1981). The statute prohibits the compulsory administration of any deleterious medication or treatment during the forty-eight-hour period prior to the probable cause hearing, unless a "medical or psychiatric emergency" exists. RSA 135-B:23, IV (Supp. 1981). The State Division of Mental Health and Developmental Services has promulgated rules which define "medical or psychiatric emergency" as a physical or mental status which, if not treated promptly, likely will result in serious physical harm to the

patient or others, or serious mental or physical decompensation of the patient. Div. Mental Health & Dev. Servs. R. He-M 303.02(c) and (g).

The proposed legislation would relax the above requirements for compulsory medication of involuntarily hospitalized patients during the period between the probable cause determination and the expiration of the maximum ten-day limit. The bill would allow a physician to administer a recognized and approved form of medical or psychiatric treatment if he reasonably believes that the treatment will tend to promote the physical and mental health of the patient, and the following two conditions are met: (1) the patient is unable to make an informed decision because of his physical or mental condition; and (2) a reasonable person would consent to the administration of the emergency treatment. In effect, the bill would eliminate the existing requirements that a physician reasonably believe that a medical or psychiatric emergency exists, and that the State be unable to consult or appoint a person who is legally responsible for the patient.

Your request raises significant questions concerning the relative interests of mental patients and of the State in compulsory medication decisions. To determine the constitutionality of the proposed legislation, we must first examine the nature and scope of the mental patient's right to refuse medication. We must then consider any overriding governmental interests that would warrant compulsory administration of treatment. Finally, we must determine whether House Bill 821 properly balances the competing interests.

It is clear that our statutes confer important rights upon mentally ill patients. RSA 135-B:42 states that no mentally ill patient shall be deprived of any legal rights unless he has been adjudicated incompetent. The statute thus creates a presumption that mentally ill persons who have not been adjudicated incompetent have the full panoply of personal rights recognized in our society. In addition, under RSA 135-B:43, every mentally ill patient has a right to adequate and humane treatment. *See Chasse v. Banas*, 119 N.H. 93, 96, 399 A.2d 608, 610 (1979).

Beyond the statutory framework, the due process clause of our State Constitution provides mentally ill persons, like all other individuals, with certain fundamental liberty interests. N.H. CONST. pt. I, art. 15; *see In re Gamble*, 118 N.H 771, 775, 394 A.2d 308, 309–10 (1978); *State v. Gregoire*, 118 N.H 140, 142–44, 384 A.2d 132, 133 (1978). Accordingly, mentally ill persons have a right to be free from unjustified intrusion upon their personal security. *See In re Gamble*, 118 N.H. at 775, 394 A.2d at 309–10; *cf. State v. Hayes*, 118

N.H. 458, 461–62, 389 A.2d 1379, 1381 (1978) (criminal defendant has fundamental right to be free from compulsory medication which could control or alter his normal thought process).

▮ Numerous authorities have recognized that the administration of medical or psychiatric treatment, particularly the use of antipsychotic drugs, may have drastic effects upon one's physical and mental well-being. *See, e.g., Rennie v. Klein,* 653 F.2d 836, 843 (3d Cir. 1981), *vacated on other grounds and remanded,* 102 S. Ct. 3506 (1982); Plotkin, *Limiting the Therapeutic Orgy: Mental Patients' Right to Refuse Treatment,* 72 Nw. U.L. REV., 461, 474–78 (1977). Such effects include permanent muscular disorders, diminished spontaneity, blurred vision, palpitations, diarrhea or constipation, low blood pressure, and fatigue. *Rennie v. Klein,* 653 F.2d at 843. These consequences certainly present a significant intrusion upon one's personal security. For this reason, it is our opinion that the right of mentally ill persons to refuse medical treatment is a liberty interest which is protected by our State Constitution. *Accord, Gundy v. Pauley,* 619 S.W.2d 730, 731 (Ky. Ct. App. 1981); *Guardianship of Roe,* 421 N.E.2d 40, 51 n.9 (Mass. 1981). *See Mills v. Rogers,* 102 S. Ct. 2442, 2448 n.16 (1982).

▮ The right to refuse medical treatment, however, is not absolute. *Gundy v. Pauley,* 619 S.W.2d at 731; *cf. State v. Hayes,* 118 N.H. at 462, 389 A.2d at 1381 (criminal defendant does not have absolute right to be tried free of medication). Two legitimate State interests exist which may override a patient's right to refuse treatment and justify compulsory medical or psychiatric treatment. One such interest is the State's interest in protecting the individual and others from harm. Thus, when an emergency exists where the patient presents a threat of harm to himself or others, the State may exercise its police power by forcibly administering medical or psychiatric treatment to eliminate the threat. *Gundy v. Pauley,* 619 S.W.2d at 731. Because of the need for immediate treatment in these emergency situations, the mental patient has only minimal procedural due process rights.

▮▮ A second interest which may justify compulsory medical or psychiatric treatment is the State's interest, as *parens patriae,* in caring for persons who are unable to care for themselves. *Rogers v. Okin,* 634 F.2d 650, 657 (1st Cir. 1980), *vacated on other grounds and remanded sub nom., Mills v. Rogers,* 102 S. Ct. 2442 (1982); *see Garrity v. Gallen,* 522 F. Supp. 171, 239 (D.N.H. 1981). When a patient is incompetent to make a decision about medical or psychiatric treatment, a State may compel treatment which will improve the

patient's condition and hasten his return to society. A finding of incompetency is required prior to the State's exercise of its *parens patriae* power to administer compulsory medical or psychiatric treatment. *Gundy v. Pauley*, 619 S.W.2d at 731. Furthermore, due process mandates the imposition of certain procedures for determining whether the patient is incompetent and, if so, whether the proposed treatment should be administered. We note, however, that the success of the treatment is often contingent upon the timing of its administration, and this factor is a significant consideration in determining what procedural protection is required.

In your resolution you state that "an emergency situation exists by virtue of [the district court's] finding of probable cause for the involuntary emergency hospitalization pursuant to RSA 135-B:23." While it may be true that an emergency exists which justifies *hospitalization*, we cannot agree that the finding of probable cause indicates that an emergency exists which would justify the State's exercise of its police power to administer compulsory *medical treatment*. In finding probable cause for involuntary emergency hospitalization, a court determines that there is probable cause to believe that the person sought to be hospitalized is "in such a mental condition as a result of mental illness as to pose a strong likelihood of harm to himself or others." RSA 135-B:19 (Supp. 1981).

■■ This finding does not indicate that the person *will continue to present a threat* to himself or others *after he has been hospitalized*. In many situations, the hospitalization itself may eliminate the likelihood of harm, and compulsory medical or psychiatric treatment may not be required to protect the State's interest. For example, a likelihood of harm justifying probable cause for involuntary emergency hospitalization may exist where an individual has a tendency to walk aimlessly among moving traffic or to jump from high elevations. Obviously, these threats of harm are unlikely to continue once the individual is hospitalized. As a result, we cannot agree that the court's finding of probable cause for involuntary emergency hospitalization is equivalent to a finding of emergency which would justify forcible medical treatment.

■ In reaching this conclusion, we do not imply that a judicial finding of "emergency" is constitutionally required. In fact, such a finding would clearly be impractical because of the urgent need for treatment in emergency situations. Of course, the State must establish some guidelines for an informal determination of emergency by at least one physician. Assuming issuance of reasonable guidelines, we conclude that the bill would represent a valid exercise of the State's police power to prevent injury to the patient or others.

 We must now determine whether the bill would be permissible as an exercise of the State's *parens patriae* power. As discussed above, a finding of incompetency is required before the State can exercise its *parens patriae* power to administer compulsory treatment, and this finding, as well as the decision whether treatment should be administered, must be made in accordance with due process. At the outset, we note that the district court's finding of probable cause for involuntary hospitalization does not constitute a finding of incompetency, because the district court makes no specific finding as to the ability of the person to make legally competent decisions.

 House Bill 821, however, requires, as a precondition for compulsory treatment, that "[t]he patient, because of physical or mental condition [be] unable to make an informed decision . . . with respect to the medical or psychiatric treatment offered . . . ." Unlike the district court's finding of probable cause, this finding is the equivalent of a finding of incompetency and, as such, would be a sufficient basis for the State's exercise of its *parens patriae* power. Nevertheless, this condition fails to satisfy the requirements of due process because neither it nor the current rules for administering emergency medical and psychiatric treatment provide any procedural protection to the patient before the finding of incompetency is made. Although we do not believe that a competency hearing before a court is necessary, the State must establish some procedure which protects the patient's interests. We note, however, that the legislature may want to provide, for purposes of convenience, for the State to be able to seek a finding of incompetency at the time of the probable cause hearing. *See* Stromberg & Stone, *A Model State Law on Civil Commitment of the Mentally Ill*, 20 HARV. J. LEGIS. 275, 281–82 (1983).

 In addition, the provision of the bill allowing for treatment when a "reasonable person would consent to the administration of the emergency treatment" also fails to satisfy the requirements of procedural due process. This provision does not establish any procedure for making a determination of when a "reasonable person" would consent to the treatment; therefore, it fails to protect the patient's rights adequately. Likewise, the current rules governing the administration of emergency treatment pursuant to RSA 135:21-b (Supp. 1981) are inadequate because they provide for review of the treatment decision only *after* treatment has begun. *See* Div. Mental Health & Dev. Servs. R. He-M 302.10, 303.04. We do not believe that a decision by a single doctor that a "reasonable person"

would consent to the proposed treatment accords with due process. Again, although we find that a judicial hearing on this issue is neither necessary nor practical in light of the importance of providing immediate treatment, some mechanism for review by other medical personnel is required. While we leave to the legislature and administrative bodies the development of appropriate procedures, we make reference to two federal appellate decisions which, although vacated on other grounds, have commented on specific procedures which may be sufficient. *See Rennie v. Klein*, 653 F.2d at 848–51; *Rogers v. Okin*, 634 F.2d at 660–61.

 We conclude that proposed House Bill 821, to the extent that it is inconsistent with this opinion, violates an involuntarily hospitalized patient's due process rights. We find it unnecessary to answer question 2.

> JOHN W. KING
> MAURICE P. BOIS
> CHARLES G. DOUGLAS, III
> DAVID A. BROCK
> WILLIAM F. BATCHELDER

The New Hampshire Psychiatric Society filed a memorandum in support of the constitutionality of House Bill 821, as amended.

*New Hampshire Legal Assistance (John MacIntosh)* filed a memorandum in opposition to the constitutionality of House Bill 821, as amended, on behalf of patients under guardianship at the New Hampshire Hospital, through the Office of Public Guardian, and on behalf of "For Ourselves"; and the *New Hampshire Civil Liberties Union (Arpiar Saunders)* joined in the memorandum.

*Gregory H. Smith,* attorney general (*Betsy S. Westgate,* assistant attorney general, and *Peter T. Foley,* attorney), filed a memorandum on behalf of the State, in support of the constitutionality of House Bill 821, as amended.