**Donald TRIMBLE, Administrator of the Estate of Andrew Trimble, Plaintiff,**

**v.**

**ANDROSCOGGIN VALLEY HOSPITAL, INC., F. David Fisher, M.D., and Martin E. Kaufman, M.D., Defendants.**

Civ. No. 93–126–M.

United States District Court,
D. New Hampshire.

March 30, 1994.

Mark M. Rufo, Nashua, NH, for plaintiff.

John E. Friberg, Manchester, NH, Michael A. Pignatelli, and Edward M. Kaplan, Concord, NH, for defendant.

## MEMORANDUM ORDER

McAULIFFE, District Judge.

Defendants Androscoggin Valley Hospital, Inc. ("AVH"), David Fisher, M.D., and Martin E. Kaufman, M.D., jointly move to dismiss plaintiff's federal claims, asserted under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (documents no. 17 and 18). For the reasons discussed below, those motions are granted. Since no federal claims remain, the complaint is dismissed without prejudice to refiling the state claims in state court.

### I. *Background*

Plaintiff's decedent, Andrew Trimble, was voluntarily admitted to AVH's psychiatric ward on or about July 10, 1992. AVH is a private hospital, a non-profit corporation, and a designated "receiving facility" within New Hampshire's Mental Health System. AVH's receiving facility status permits it to receive and provide care, custody, and treatment to persons subject to involuntary hospitalization. N.H.Rev.Stat.Ann. ch. 135–C:26. Defendants, Martin E. Kaufman, M.D., and F. David Fisher, M.D., are physicians who attended Andrew Trimble during his hospitalization at AVH.

Plaintiff alleges that shortly after his voluntary admission, Andrew Trimble expressed a desire to leave AVH, but was held against his will by "force, threat, or deception." Amended Complaint, ¶ 10. Four days after his admission, on July 14, 1992, Andrew Trimble did leave the hospital—on his own and without AVH's approval. Unnamed hospital employees apparently alerted local police of Mr. Trimble's departure. The police were told that Trimble was suicidal, and they were asked to find him and return him to the hospital.

A short time later officers of the Berlin, New Hampshire, Police Department located Mr. Trimble walking along a bridge. The officers approached Trimble and confirmed his identity. Mr. Trimble was cooperative at all times. He allegedly "indicated no desire to harm himself or others," stating to the officers that he merely wished to "go home." Amended Complaint, ¶ 14. The police officers took Mr. Trimble into custody and returned him to the hospital a short time later. That evening, Mr. Trimble was found unconscious in his hospital room, hanging by his neck. Six days later, he was pronounced dead. Amended Complaint ¶ 17.

### II. *The Civil Rights Claims*

In order to state a cause of action under 42 U.S.C. § 1983, plaintiff must allege (1) a deprivation of rights secured by the laws or constitution of the United States, and (2) that the deprivation was committed by a person acting "under color of state law." *Rodriguez–Garcia v. Davila,* 904 F.2d 90, 94 (1st Cir.1990) (citing *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978)). In ruling on defendants' motion to dismiss, the court must accept all of plaintiff's factual allegations as true, and will construe all reasonable inferences arising from those facts in favor of plaintiff. *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.,* 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965); *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir. 1989).

A defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Although *Monell* involved a municipal corporation, every circuit court to consider the issue

has extended the holding to private corporations as well." *Harvey v. Harvey*, 949 F.2d 1127, 1129 (11th Cir.1992) (citing cases). Thus, as a preliminary matter, AVH is not liable for the conduct of its agents or employees, and, since AVH is not alleged to have directly caused any deprivation of plaintiff's decedent's protected rights,[1] the complaint must be dismissed as to it.

■ Even if plaintiff's allegations could be construed as setting forth a direct claim against AVH for restraining or involuntarily committing Mr. Trimble against his will, thereby impinging upon his liberty interests as protected by the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment, it is nevertheless clear that AVH is still not liable, because it did not act under color of state law. AVH is a private facility, albeit designated under state law as an emergency receiving and treatment facility for the mentally ill. That designation is regulatory in nature, intended to assure the availability of quality mental health services throughout the state. By designating a private hospital as a receiving facility, the state attests to that institution's qualification and license to deliver certain medical services, but it has neither converted the designated hospital into a state-operated medical facility, nor has it deputized affiliated private physicians as its agents. *See Harvey v. Harvey*, 949 F.2d 1127, 1331–32 (11th Cir.1992) (citing *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 544, 107 S.Ct. 2971, 2985, 97 L.Ed.2d 427 (1987) (extensive government regulation does not transform actions of regulated entity into those of government)); *Cobb v. Georgia Power Co.*, 757 F.2d 1248, 1250–51 (11th Cir.1985) (same); *Spencer v. Lee*, 864 F.2d 1376 (7th Cir.1989), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990).

■ The dispositive issue in this case is reasonably straight-forward: Do private hospitals and private physicians act "under color of state law" for purposes of section 1983 liability when they exercise professional judgment in connection with, or deliver professional services related to, the involuntary hospitalization of persons thought to be in need of treatment due to mental illness?

Like many states, New Hampshire has enacted a comprehensive statutory scheme to provide for involuntary emergency hospitalization, subject to conditions and procedures designed to protect individual rights. N.H.Rev.Stat.Ann. ch. 135–C:20–33 (hereinafter "RSA 135–C:____"); *see, e.g., Opinion of Justices*, 123 N.H. 554, 465 A.2d 484 (1983). A person is eligible for involuntary emergency hospitalization if specified medical criteria are met (RSA 135–C:27), as determined by "a physician who is approved by a community mental health program ... or a receiving facility[,] or [by] a board-certified psychiatrist." RSA 135–C:28 I. If a physician or psychiatrist makes the requisite findings and completes an involuntary admission certificate, "any law enforcement officer shall take custody of the person to be admitted and immediately deliver him [or her] to the receiving facility...." RSA 135–C:29. Upon admission the patient is to be advised of his or her rights to counsel and a hearing, and further informed that, unless extended by a court of competent jurisdiction, the period of involuntary admission cannot exceed ten days. RSA 135–C:30. Within three days after admission (not including Sundays and holidays) a probable cause hearing must be held in a state district court. Before the end of the next regular business day following the hearing, the district court must issue a written order either continuing or terminating the involuntary admission. RSA 135–C:31 I. Any "responsible person" may petition for involuntary hospitalization or for a hearing relative to the need for involuntary admission.[2] RSA 135–C:28, 35, 36. An ex-

---

1. Plaintiff's "bald allegations and unsupported conclusions" set forth in paragraph 24 of his amended complaint ("[AVH] through its policies and customs was a moving force in proximately causing the damages stated in the complaint.") are insufficient to withstand defendant's motion to dismiss. *Rubin v. Smith*, 817 F.Supp. 987 (D.N.H.1993); *Dartmouth Review, supra*.

2. *See Dahl v. Akin*, 630 F.2d 277, 281 n. 3 (5th Cir.1980) (because statute allowed *any* adult person to initiate commitment proceedings, actual initiator could not be assumed to have acted in official capacity), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1977, 68 L.Ed.2d 296 (1981).

amining or certifying physician *may*, but need not serve as a "petitioner." *Id.*

In *Kay v. Benson*, 472 F.Supp. 850 (D.N.H.1979), this court (Caffrey, J.[3]) found that an earlier version of New Hampshire's involuntary emergency hospitalization statutes [4] amounted to a delegation of the power of detention by the legislature to private individuals. The court held the power of detention to be a "type of power normally and historically exercised by sovereign states and other governmental entities." *Kay*, 472 F.Supp. at 851. Since, under that view, physicians were deemed statutorily empowered to do something which they otherwise would not have the right to do as private individuals, the exercise by a physician of any function permitted under New Hampshire's involuntary hospitalization statutes was held to constitute "state action," subjecting the physician to potential liability under 42 U.S.C. § 1983.

Since *Kay v. Benson* was decided, other courts have reached emphatically different conclusions. In *Spencer v. Lee*, 864 F.2d 1376 (7th Cir.1989), Judge Posner, writing for the Seventh Circuit Court of Appeals sitting *en banc*, reviewed the history of involuntary civil commitment practices and determined that "treatment of the mentally disabled, as of the sick and infirm generally," has *not* been traditionally the exclusive prerogative of the state. Hence, exercise of involuntary commitment powers by private persons was found not to equate to state action for section 1983 purposes:

> The reasons for private commitment, as for self defense, citizen's arrests, and other private remedies are intensely practical. If a person displays symptoms of acute and violent mental illness, his family or physician—in an appropriate case a passerby or other stranger—may have to act immediately to restrain him from harming himself or others, and there may be no public institution at hand....
>
> ....

... If [plaintiff] thinks the eight days allowed by Illinois law for confinement prior to hearing is too much, he can challenge the constitutionality of the statute, by analogy to *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). He has not done so. Indeed he relies on the statute to make the defendants state actors. But a private commitment is no more state action than a citizen's arrest, the repossession of chattels, or the ejection of trespassers is. The statutes authorizing or constraining these private activities may or may not be constitutional (*Fuentes*); the activities themselves remain private....

*Spencer*, 864 F.2d at 1381 (citations omitted).

Relying in part on *Spencer*, the Court of Appeals for the Eleventh Circuit reached an identical result in *Harvey v. Harvey, supra*, holding: "We are unwilling to categorize involuntary commitment in Georgia as a function so reserved to the state that action under the commitment statute transforms a private actor into a state actor." *Harvey*, 949 F.2d at 1131. "To hold otherwise would expose private hospitals and private physicians to section 1983 liability whenever they act pursuant to the ... commitment statutes, despite the fact that their actions ultimately reflect medical judgments made according to professional standards that are not established by the state." *Id.* at 1132 (citations omitted).

The reasoning of *Spencer* and *Harvey* is both compelling and applicable by analogy to involuntary commitment practices in New Hampshire under RSA 135–C. A private physician or private hospital should not become a state actor for purposes of section 1983 liability merely by invoking or acting in accordance with, or by failing to invoke or act in accordance with, the provisions of RSA 135–C when exercising professional judgment or delivering professional services related to the involuntary hospitalization of persons in need of mental health care. The contrary holding in *Kay v. Benson, supra*, appears on reflection to be in error and its reasoning unpersuasive.[5] Accordingly, this

---

**3.** Of the District of Massachusetts sitting by designation.

**4.** RSA 135–B:19–25, which were identical in all pertinent respects to the current statutes.

**5.** *But see, e.g., Rubenstein v. Benedictine Hospital,* 790 F.Supp. 396 (N.D.N.Y.1992); *Davenport v.*

court declines to follow or apply it here, and instead finds, for the reasons discussed at length in *Harvey* and *Spencer*, that neither AVH nor the defendant physicians acted under color of state law.

Of course, if AVH and the defendant physicians did not invoke and were not acting pursuant to any particular statutory scheme, their actions could only be entirely private, not "fairly attributable to the state," and thus incapable of satisfying the "under color of state law" element of a section 1983 claim. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). *See Harvey,* 949 F.2d at 1133. It is perhaps too fine a point, but plaintiff does take pains to allege that "AVH, Dr. Fisher and Dr. Kaufman failed to follow any legal procedures to secure the involuntary commitment of Andrew Trimble." Amended Complaint, ¶ 19; *see also id.,* ¶ 20. If that allegation is interpreted to mean defendants never invoked or purported to act under color of statutory authority, then it would seem to follow that they could not be deemed state actors for section 1983 purposes. And, if construed otherwise, as an allegation that defendants could not have hospitalized Trimble against his will *except* under color of state law, but that they entirely failed to comply with the law's substantive and procedural requirements, then defendants are not state actors for the reasons discussed above.

Finally, plaintiff alleges, in general, that defendants became "state actors" as a result of their individual or collective invocation of local police assistance. While it is true that a private person may be transformed into a state actor based upon willful participation in joint action with the state or its agents, *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980), here plaintiff has failed to adequately plead conspiracy with the state actors (i.e. the police). Moreover, it is unlikely that plaintiff *could* plead a valid conspiracy sufficient to transform these defendants into state actors. *See Harvey,* 949 F.2d at 1133. As plaintiff concedes, the Berlin police officers involved in this matter acted entirely appropriately and reasonably under the circumstances.[6] Those concessions preclude finding that the police and these private defendants reached an understanding designed to violate plaintiff's decedent's constitutional or federal statutory rights. Here, as in *Harvey,* "[plaintiff's] complaint consists of purely conclusory allegations that do not plead conspiracy sufficiently to transform [these private defendants] into state actors." *Id.*

For the reasons stated, plaintiff's section 1983 claims against AVH, Dr. Fisher, and Dr. Kaufman must be dismissed. If liability exists at all in this case, it is based on state law theories, e.g. false imprisonment or medical malpractice.

### III. *The RICO Claims*

Defendants also move to dismiss plaintiff's claims under RICO. Extensive discussion is not required. Only under the most strained of readings can the facts alleged in plaintiff's complaint be construed as alleging criminal activity, much less a pattern of criminal activity sufficient to sustain a RICO claim. *See Miranda v. Ponce Federal Bank,* 948 F.2d 41, 44 (1st Cir.1991). The court adopts defendants' thorough memorandum of law in support of their motion to dismiss plaintiff's RICO claims, and finds that those claims must be dismissed.

### IV. *Conclusion*

Plaintiff's claims under section 1983 and RICO are hereby dismissed. Since there are no surviving federal claims, the court declines to exercise supplemental jurisdiction over plaintiff's state claims. The court, of course, makes no ruling on the viability of those state claims. Accordingly, plaintiff's state claims are also dismissed, but without prejudice to plaintiff's pursuing them in state court. 28 U.S.C. § 1367(c); *Mine Workers*

---

*Saint Mary Hospital,* 633 F.Supp. 1228 (E.D.Pa. 1986); *Brown v. Jensen,* 572 F.Supp. 193, 197 n. 1 (D.Colo.1983).

**6.** Plaintiff's Offer of Proof, ¶¶ 12 and 13: "At all times, Berlin P.D. was under the impression that in requesting police custody for Trimble, AVH was acting under color of state law and in its capacity as a designated facility of the State of New Hampshire Mental Health System. The actions of the Berlin P.D. were in no way unreasonable in light of the above circumstances."

*of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

SO ORDERED.