## LITTLE v. GIBSON.

An act of the legislature, making parties to pending suits competent witnesses on the trial thereof, is not unconstitutional.

Conviction for adultery does not render a person incompetent to testify as a witness.

Possession of a deed by the grantee, soon after its date, is competent evidence upon the question of its having ever been delivered.

The declarations of an ancestor, while possessed of all the rights claimed through him, are competent to be received against the claim made by a party as his heir.

The declarations of the grantor of a deed, alleged to have been procured by fraud and never delivered, may be received to rebut evidence tending to sustain those allegations.

WRIT OF ENTRY, dated August 18, 1856, brought to recover an undivided half of a tract of land in Atkinson. Plea, *nul disseizin.*

The parties both claimed title from Sarah Webster, who, by deed from her father, was the owner of the land in 1845, and for many years prior thereto, her husband having died in 1844. In 1845, Sarah Webster had three children living, who were her sole heirs—Rebecca Little, one of the plaintiffs, Sarah Gibson, the wife of the defendant, and Hannah, wife of Daniel S. Heath. Mrs. Gibson died in 1854, leaving only one child, James F. Gibson, who was twenty-four years of age, and died in April, 1855, without issue, having never been married. Sarah Webster died in October, 1855.

The demandants maintained that as Mrs. Gibson died before her mother, the plaintiff, Rebecca Little, and Hannah Heath, were her sole heirs, and inherited the estate jointly.

The tenant contended that in June, 1845, Mrs. Webster made a conveyance of the land to two of her daughters, Hannah Heath and his wife, Sarah Gibson, and introduced a deed of the premises from Mrs. Webster to them, dated June 17, 1845, purporting to be duly executed and acknowledged, and which was recorded November 2, 1846; and also introduced evidence tending to show its due execution; and he maintained that by this conveyance the land passed to Mrs. Heath and his wife; that his wife dying before their son, James F. Gibson, her share descended to him, and that James F., dying without issue, the tenant was his heir and inherited the land from him.

The demandants contended that this deed was procured by fraud upon the grantor, and that it was never duly executed or delivered; and the principal controversy between the parties related to the validity of this deed.

Among other evidence of the demandants, they offered themselves as witnesses, and they were sworn, subject to the defendant's exception.

The demandants also offered evidence of the declarations and acts of Mrs. Webster subsequent to the record-

ing of the deed in controversy, tending to show that the deed was fraudulently procured and never delivered.

The tenant was offered as a witness, and sworn, to which the demandants excepted.

The tenant showed that Hannah Heath, after this deed was given, made a conveyance of a part of the land to Alpheus Currier; and Currier testified that at the time of the conveyance to him, Hannah Heath exhibited an original deed to her and Mrs. Gibson of the land in dispute, from Sarah Webster. To this testimony of Currier the demandants excepted. The tenant introduced the deposition of Daniel S. Heath, the husband of Hannah. The demandants excepted to his competency, on the ground that before the caption of the deposition he had been convicted of adultery, and they produced the record of his conviction. The objection was overruled and the exception saved. The objection was not taken at the caption.

In 1852, Mrs. Gibson gave a deed of her half of the land conveyed in Mrs. Webster's deed, to her son James F. Gibson. Her husband, the tenant, did not sign the deed as a party, but as a witness, and the court ruled that nothing passed by the deed. At the time this deed to James F. was given, the Webster deed was brought forward by Mrs. Gibson from an adjoining room, and was used in drawing the deed to James F. Gibson. At the same time a deed was given by Mrs. Heath to her son, of her half of the land. Mrs. Webster was present at the time, and the evidence tended to show that she understood well what was being done; and after the deeds were finished she remarked to her grandsons, the grantees, that "now they had something to remember her by." The deed to James F. Gibson was admitted in evidence, and the demandants excepted. The demandants also excepted to the competency of the declaration of Mrs. Webster to her grandsons.

The tenant also introduced evidence of other declara-

---

Little *v.* Gibson.

---

tions of Mrs. Webster, made after the giving of the deed by her, tending to show that the deed was not procured by fraud, and had been duly delivered, to which evidence the demandants excepted.

The jury returned a verdict for the tenant, and the demandants moved to set the same aside and for a new trial, for supposed errors in the foregoing rulings of the court.

*Charles H. Bell,* for the defendants, contended,

1. That the act of June 25, 1858, making parties witnesses in pending suits, was unconstitutional, citing *Woart* v. *Winnick,* 3 N. H. 473 ; *Pickering* v. *Pickering,* 19 N. H. 389.

2. That a conviction for adultery renders the party incompetent to testify—that offence being a species of the *crimen falsi ;* a violation of a marriage covenant of the most solemn and binding character ; a vital *fraud* upon the husband injured, calculated to introduce into his family spurious and supposititious offspring ; a crime of the greatest moral turpitude, contrary to the divine commandment, and in criminality, fraud and falsehood, far exceeding petty larceny, and most other crimes incapacitating a witness.

3. That Mrs. Webster's declarations, not being part of the *res gestæ,* and she being the tenant's grantor, were incompetent ; especially because made to parties in no way acquainted with the real facts, and capable of being explained upon other hypotheses than that contended for by the tenant.

*Wells & Wilcox,* for the tenant, contended,

1. That the statute making parties witnesses was constitutional ; that it did not impair vested rights, but merely cured defects in the remedy ; that the decision in *Pickering* v. *Pickering,* 19 N. H. 389, is placed upon a most unsubstantial basis ; that it is due to the justice whose name

stands at the head of that opinion, to say that he is not at all responsible for the course of reasoning thus attempted to be put in his mouth ; that from the counsels' knowledge of him, they were free to say that had he lived to write out his opinion, he would never have attempted to place it upon such unsubstantial grounds ; and that at all events, there is a marked difference between a radical change in the rules and forms of pleading as in that case, and merely removing a disability from a witness.

2. That adultery is not a felony nor *crimen falsi*.

3. That the acts and declarations of Mrs. Webster were admissible, citing 2 Phill. Ev. 646, 481, note ; *Lowden* v. *Watson*, 2 Stark. N. P. 230 ; *Ivat* v. *Finch*, 1 Taunt. 141 ; *Davies* v. *Pierce*, 2 T. R. 53.

FOWLER, J. In *Rich* v. *Flanders* (*ante* page 304), the question of the constitutionality of the act of June 25, 1858, in its application to pending suits, by making the parties thereto competent witnesses on the trial thereof, was fully considered by the court, and decided in the affirmative. A portion of the opinion of the member of the court to whom this case had been assigned, and which had been prepared for its decision, coinciding with the views of the majority, will be found in the report of that case.

In our judgment, the act of June 25, 1858, makes the parties to pending suits, not excepted from its operation, competent witnesses on the trial thereof, and in so doing is not unconstitutional as being retrospective, within the prohibition of the 23d article of the Bill of Rights, inasmuch as it establishes no new rule for the decision of those causes, and violates no vested rights of the parties thereto, but is a mere regulation of the proceeding for enforcing remedies, by prescribing a rule for the admission of existing evidence therein—an exercise of the acknowledged powers of every government.

At common law—and we have no statute in this State upon the subject—persons convicted of treason, felony, and every species of the *crimen falsi*, are incompetent to testify as witnesses, by reason of their infamy. Thus a conviction for forgery will disqualify, as will also a conviction of any offence tending to pervert the administration of justice by falsehood or fraud. Of this nature are perjury, and subornation of perjury; attaint of false verdict; bribing a witness to absent himself, in order that he may not give evidence; conspiring to procure the absence of a witness; conspiring to accuse another person of a capital offence; barratry, and other crimes of a like character. 1 Phill. Ev., 14; 1 Gr. Ev., sec. 373; Whart. Com. Law 354.

The extent and meaning of the term *crimen falsi*, are no where defined with any considerable degree of precision, but from an examination of the various decisions touching the matter, it may be deduced that the *crimen falsi* of the common law not only involves the charge of falsehood, but is any offence which may injuriously affect the administration of justice, by the introduction of falsehood and fraud. Whart. Cr. Law 354, and authorities.

We have been unable to find any decision holding adultery to be one of those offences, conviction for which renders a person infamous; it works no forfeiture of goods or lands, and therefore is not a felony; and notwithstanding the forcible and ingenious argument of the demandants' counsel, we are of opinion that it does not come within any of the classes of crime recognized by the common law as *crimena falsi*.

The testimony of Alpheus Currier was clearly competent to rebut the demandants' evidence tending to prove that the deed from Mrs. Webster had never been delivered, as it went directly to show that deed in the possession of one of the grantees not long after its date.

The declarations of Sarah Webster seem to us to have been admissible on both the grounds taken by the counsel

for the tenant, as declarations of the ancestor of the demandants, under whom they claimed title as heirs, made while she was in possession of all the rights claimed through her, and as tending strongly to rebut the evidence offered by the demandants to show that the deed from her to Mrs. Gibson and Mrs. Heath had been fraudulently procured and never delivered. 2 Phill. Ev. (Cow. & Hill's Notes) 646—656, and authorities; *Smith* v. *Powers*, 15 N. H. 563; *Pike* v. *Hayes*, 14 N. H. 17; *Hobbes* v. *Cram*, 22 N. H. 150.

It is unnecessary now to decide whether both the demandants could be competent witnesses under the statute, since the verdict was against their testimony.

All the objections thereto, raised by the demandants, being overruled, there must be·

*Judgment upon the verdict.*