Hillsborough-northern judicial district
No. 2008-615

THE STATE OF NEW HAMPSHIRE

v.

RAYMOND K. FOURNIER

Argued: November 19, 2008
Opinion Issued: January 8, 2009

*Kelly A. Ayotte*, attorney general (*Karen A. Schlitzer*, assistant attorney general, on the brief and orally), for the State.

*Mark A. Larsen*, public defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. This matter comes before us on an interlocutory transfer of a question of law without ruling. *See* SUP. CT. R. 9. The Superior Court (*Barry*, J.) submits for our resolution the following question:

> Do the provisions of RSA 135-E:10 (abrogating the privilege of certain communications) and RSA 135-E:15 (authorizing the release of confidential and privileged material) violate Part I, Article 23 of the New Hampshire Constitution by retrospectively "tak[ing] away or impair[ing] a vested right, acquired under existing laws . . . ." *Woart v. Winnick*, 3 N.H. 473, 479 (1826). *See also In the Matter of Goldman and Elliot[t]*, 151 N.H. 770 (2005).

We respond in the negative and remand.

The respondent, Raymond K. Fournier, pled guilty in 1994 to seven counts of aggravated felonious sexual assault and was sentenced to five to fifteen years in the New Hampshire State Prison (NHSP). While at the NHSP, the respondent received mental health treatment after signing limited confidentiality agreements. The respondent also participated in the sexual offender treatment program (SOTP) in 2003 after signing a treatment contract acknowledging the confidential nature of the program and a limited waiver of confidentiality.

With his sentence set to expire on June 16, 2008, the department of health and human services (DHHS) notified the respondent in January

2008 that he would be evaluated for civil commitment pursuant to RSA chapter 135-E. RSA chapter 135-E is intended to address the social ill posed by "a small but extremely dangerous number of sexually violent predators . . . who do not have a mental disease or defect that renders them appropriate for involuntary treatment under RSA 135-C." RSA 135-E:1 (Supp. 2008). The General Court found that such predators are likely to "engag[e] in repeat acts of predatory sexual violence" and that long term, specialized treatment is thus required. *Id.*

DHHS assembled "a multidisciplinary team," RSA 135-E:3, I (Supp. 2008), to evaluate whether the respondent met "the definition of a sexually violent predator," *id.* A "sexually violent predator" is defined as "any person who . . . [h]as been convicted of a sexually violent offense; . . . [s]uffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment; and . . . [i]s not eligible for involuntary admission under RSA 135-C or RSA 171-B." RSA 135-E:2, XII (Supp. 2008).

After obtaining and reviewing various documents and information pursuant to RSA 135-E:3, IV (Supp. 2008), including police reports, confidential department of correction files, mental health treatment and other medical records, the multidisciplinary team concluded that he met the definition of a sexually violent predator. The State petitioned the superior court for civil commitment pursuant to RSA chapter 135-E. The trial court found probable cause to believe that the respondent met the definition of a sexually violent predator and ordered him detained pending further proceedings.

The State's preliminary list of trial witnesses includes many or all of the respondent's NHSP mental health treatment providers. The State moved to compel these individuals' testimony after a health provider in a separate RSA chapter 135-E proceeding declined to answer deposition questions, absent a release from the patient or a court order, because she was a licensed clinical social worker subject to both RSA 330-A:32 (2004) and the board of mental health practice's professional ethics rules.

The State's motion to compel relies upon the abrogation by RSA 135-E:10, I (Supp. 2008) of certain testimonial privileges. The respondent is one of five persons objecting and asserting a testimonial privilege during civil commitment proceedings in response to the State's motions to compel. The State does not dispute that some or all of the testimony and other evidence it seeks is both privileged and confidential and that the respondent has not consented to its release. We accepted this interlocutory transfer without ruling because of the significance of the issues raised and stayed the other cases pending its disposition.

RSA 135-E:10, I, provides, in relevant part, that

> the doctor-patient privilege under RSA 329:26, privileged communications pursuant to RSA 330-A:32, or other similar statutes or rules shall not apply in proceedings under [RSA chapter 135-E].

RSA 135-E:10, I. RSA 135-E:15, I, provides, in relevant part, that

> relevant information and records that are otherwise confidential or privileged shall be released to the agency with jurisdiction, to a multidisciplinary team, or to the county attorney or attorney general for the purpose of meeting the notice requirements of this chapter and determining whether a person is or continues to be a sexually violent predator.

RSA 135-E:15, I (Supp. 2008).

We are asked whether these two provisions offend the state constitutional prohibition on retrospective laws. *See* N.H. CONST. pt. I, art. 23. A statute's constitutionality is a question of law which we decide *de novo*. *See Baines v. N.H. Senate President*, 152 N.H. 124, 133 (2005).

> Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses.

N.H. CONST. pt. I, art. 23. Part I, Article 23 enumerates two types of retrospective laws: those "for the decision of civil causes[;] and [those] for the punishment of offences." *Woart v. Winnick*, 3 N.H. 473, 474 (1826). The latter are commonly referred to as *ex post facto* laws and generally "inflict[] a punishment upon the person who has committed [a crime.]" *Id.* at 475 (quotation omitted); *see also State v. Matthews*, 157 N.H. 415, 418 (2008). The respondent has not asserted the *Ex Post Facto* Clause and here we are concerned only with the former type of proscribed retrospective laws, those "for the decision of civil causes," N.H. CONST. pt. I, art. 23. We ordinarily classify "the care, treatment and indeterminate commitment of persons who are insane, mentally deranged, emotionally or mentally ill . . . [as] a civil rather than a criminal proceeding." *In re Moulton*, 96 N.H. 370, 373 (1950).

In testing legislation against Part I, Article 23, we conduct a two-part analysis to determine if it is unconstitutionally retrospective. *See Goldman*, 151 N.H. at 772. First, we discern whether the legislature intended the law to apply retroactively. *See id.* If so, we then inquire whether such retroactive application is constitutionally permissible. *See id.*

■ The parties do not dispute that RSA chapter 135-E abrogates confidences and testimonial privileges retroactively. *See* RSA 135-E:19 (Supp. 2008). Indeed, RSA 135-E:19 provides that "this chapter applies retroactively to all persons in custody as of [January 1, 2007,] who have been convicted of a sexually violent offense." *Id.* This statement evinces an express legislative intent for retroactive application. *See Goldman*, 151 N.H. at 772.

■ Our inquiry is therefore limited to whether the statutes "take[] away or impair[] vested rights, acquired under existing laws, or create[] a new obligation, impose[] a new duty, or attach[] a new disability, in respect to transactions or considerations already past." *Id.* (quotation omitted). As a guidepost, we inquire whether they "affect substantive rights and liabilities . . . [or whether they] solely affect procedures or remedies enforcing those rights." *Id.* Ultimately, "we . . . discern the nature of the rights affected by the . . . act to assess whether its application to a particular matter offends the constitution." *Id.* at 773 (quotation and citation omitted).

The respondent asserts that RSA 135-E:10, I, and RSA 135-E:15, I, impermissibly vitiate three of his vested rights: a right to assert testimonial privilege; a right to medical confidentiality; and a contractual right to confidentiality he enjoyed with the department of corrections. We consider each in turn.

## I. Testimonial Privilege

■ The respondent correctly recognizes that the therapist-client privilege is animated by broad and varied public policy. We have observed that such public policy "may be even more compelling than that behind the usual physician-patient privilege" given the need for complete trust to facilitate communication and treatment. *In the Matter of Berg & Berg*, 152 N.H. 658, 664 (2005). The therapist-client privilege, like most testimonial privileges, is not absolute and we have recognized that certain privileges must "yield when the disclosure of information is essential." *State v. Elwell*, 132 N.H. 599, 605 (1989), *superseded in part on other grounds by* RSA 329:26 (Supp. 2008).

■■ Our jurisprudence generally classifies the legislative abrogation of an evidentiary privilege as constitutionally permissible, *see Rich v. Flanders*, 39 N.H. 304, 323 (1859), *overruled in part on other grounds by Caswell v. Maplewood Garage*, 84 N.H. 241 (1930); *Little v. Gibson*, 39 N.H. 505 (1859), given that witness privileges exist as rules of evidence, *see* N.H. R. Ev. 501. "[N]o one can have a vested right in the testimony of any particular witness . . . ." *Rich*, 39 N.H. at 336. In *Little* we said:

> [An act] mak[ing] the parties to pending suits, not excepted from its operation, competent witnesses on the trial thereof, . . . is not unconstitutional as being retrospective . . . inasmuch as it establishes no new rule for the decision of those causes, and violates no vested rights of the parties thereto, but is a mere regulation of the proceeding for enforcing remedies, by prescribing a rule for the admission of existing evidence therein — an exercise of the acknowledged powers of every government.

*Little*, 39 N.H. at 509. Thus, we affirm our prior holdings and conclude that the statutory and other similar evidentiary privileges abrogated by RSA 135-E:10, I, are creatures of public policy and subject to retrospective alteration or elimination by the legislature. *See Goldman*, 151 N.H. at 773-74.

## II. Confidentiality

Citing *Goodrow v. Perrin*, 119 N.H. 483, 485 (1979), and *Whalen v. Roe*, 429 U.S. 589 (1977), the respondent asserts that he "has a vested [constitutional] right to maintain the confidences he shared with his treatment team, which cannot be taken away by legislative fiat." Although any such assertion is belied by his limited waivers of confidentiality discussed below with respect to his asserted contractual rights, we address this argument for guidance in other circumstances where such limited waivers may not exist.

We have never recognized a constitutional right to the privacy of medical information on behalf of incarcerated persons and we decline to do so now. *But cf. In re Caulk*, 125 N.H. 226, 230 (1984) (recognizing state constitutional right of individual privacy "that . . . may be asserted to prevent unwanted infringements of bodily integrity"); *Opinion of the Justices*, 123 N.H. 554, 559 (1983) (recognizing that State Constitution provides mentally ill persons "with certain fundamental liberty interests" such as the "right to be free from unjustified intrusion upon their personal security"). Even if such a right did exist, it would not be absolute. *See Caulk*, 125 N.H. at 230; *In re Grand Jury Subpoena (Medical Records of Payne)*, 150 N.H. 436, 440-41 (2004) (describing three circumstances supporting "disclosure of privileged and relevant medical records"); *see also Whalen*, 429 U.S. at 601-04.

There is ample federal authority discussing the lack of recognition of any such right. *See Tokar v. Armontrout*, 97 F.3d 1078, 1084 (8th Cir. 1996); *Anderson v. Romero*, 72 F.3d 518, 522-23 (7th Cir. 1995); *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994); *Adams v. Drew*, 906 F. Supp. 1050, 1057-58

(E.D. Va. 1995). Even those federal courts recognizing such a right acknowledge that it must yield when waived or when the government has articulated sufficient need. *See Powell v. Schriver*, 175 F.3d 107, 112-13 (2d Cir. 1999).

▇▇▇▇ Accordingly, any clear right to medical confidentiality in prisons can only be said to exist by virtue of statute, administrative regulation or the common law of torts such as those relating to an invasion of privacy, *see, e.g., Remsburg v. Docusearch*, 149 N.H. 148, 156 (2003). We have clearly stated that there is "no general right to the continuance even of prior substantive law." *Goldman*, 151 N.H. at 774 (quotation omitted).

> [T]he individual citizen, with all his rights to protection, has no vested interest in the existing laws of the State as precludes their amendment or repeal by the legislature; nor is there any implied obligation on the part of the State to protect its citizens against incidental injury occasioned by change in the law.

*Id.* at 773 (quotation omitted). Because the confidential status of the respondent's records is purely dependent upon the existence of statutory, administrative or common law, we cannot say that he acquired a vested right to medical confidence. *See id.* at 774; *People v. D.K.B.*, 843 P.2d 1326, 1331 (Colo. 1993) ("A right is only vested when it is not dependent upon the common law or the statute under which it was acquired for its assertion, but has an independent existence."). Accordingly, we reject the respondent's assertion that he has a vested right to maintain confidences.

### III. Contractual Rights

The respondent argues that the abrogation of privileges and confidences unconstitutionally impairs contractual rights he acquired through counseling agreements with the department of corrections.

▇▇▇▇ Part I, Article 23 does not expressly reference existing contracts. However, we have held that its proscription "duplicates the protections found in the contract clause of the United States Constitution." *Opinion of the Justices (Furlough)*, 135 N.H. 625, 630 (1992). The Federal and State Constitutions "offer equivalent protections where a law impairs a contract, or where a law abrogates an earlier statute that is itself a contract." *Id.*

▇▇▇▇ A Contract Clause violation "has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Id.* at 631 (quotation omitted). We will assume, without deciding, that a contractual relationship existed between the respondent and the department of corrections.

 Our review of the limited confidentiality agreements leads us to conclude that neither statute impairs the respondent's contracts in any way. The two "Limits of Confidentiality Advisor[ies]" that the respondent signed in 1994 and 2000 provide that communications with his therapist "will be held in confidence, but not complete confidence." In addition to informing the respondent that the communications may ultimately be placed in his record, they state that "[u]nder certain restricted conditions the contents of an individual's record are accessible to courts."

The respondent also signed an "Acknowledgement of Confidentiality Waiver" upon entering the SOTP in 2003. The writing informed him that a "Discharge Summary will be prepared upon termination or completion of the [SOTP]" and that this summary "may be released to the courts during any legal proceedings." Thus, we do not see how either statute impairs the contractual rights that the respondent asserts.

*Remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.