Original
No. 2008-325

PETITION OF CONCORD TEACHERS
(New Hampshire Retirement System)

Argued: February 12, 2009
Opinion Issued: April 8, 2009

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Scott H. Harris* and *Coleen M. Penacho* on the brief, and *Mr. Harris* orally), and *Steven R. Sacks*, of Concord, staff attorney, NEA-New Hampshire, by brief, for the petitioners.

*Getman, Stacey, Schulthess & Steere, P.A.*, of Bedford (*Andrew R. Schulman* on the brief and orally), for the respondent.

HICKS, J. In this petition for a writ of certiorari, the petitioners, nineteen retired Concord teachers, seek review of the determination by the Board of Trustees (board) of the respondent, the New Hampshire Retirement System (NHRS), that early retirement benefits received in their final twelve months of employment were not exempt from the 150 percent cap on "[e]arnable compensation," RSA 100-A:1, XVII (Supp. 2008), because there was insufficient evidence that they were "based on," Laws 1991, 313:7, unused, pre-1991 sick time. We affirm.

Before discussing the relevant facts, we summarize the relevant statutes governing the NHRS and the computation of retirement annuities.

The NHRS is a "qualified pension trust," RSA 100-A:2 (2001), funded by both member contributions, *see* RSA 100-A:16, I (Supp. 2008), and employer contributions, *see* RSA 100-A:16, II (Supp. 2008). Teachers contribute five percent of their compensation toward the member annuity savings fund. *See* RSA 100-A:16, I(a). Their employers contribute toward the state annuity accumulation fund — school districts contribute 65 percent of the total employer contributions, and the State contributes the remaining 35 percent. *See* RSA 100-A:16, II(c). The assets of each fund are invested "[s]olely in the interest of the participants and beneficiaries." RSA 100-A:15, I-a(a)(1) (Supp. 2008). Upon retirement, members of the NHRS receive a defined lifetime "retirement allowance," RSA 100-A:5 (2001),

consisting of "the sum of the member annuity and the state annuity," RSA 100-A:1, XXII (2001). *See* RSA 100-A:1, XX, XXI (2001) (defining "Member annuity" and "State annuity").

■ The petitioners are "Group I members" of the NHRS. RSA 100-A:1, X(a) (2001); *see* RSA 100-A:3, I(a) (Supp. 2008). Their member and state annuities are determined, in part, by their "average final compensation." RSA 100-A:5, I(b) (2001). Average final compensation is "the average annual *earnable compensation* of a member during his or her highest 3 years of creditable service." RSA 100-A:1, XVIII (Supp. 2008) (emphasis added). Earnable compensation generally includes "the full base rate of compensation paid plus" various other compensation, such as "holiday and vacation pay" and "sick pay." RSA 100-A:1, XVII.

Presumably in response to escalated levels of earnable compensation attributable to one-time payouts in the final twelve months of employment, the legislature amended the definition of earnable compensation in 1991, limiting it "to 1-1/2 times the higher of the earnable compensation in the 12-month period preceding the final 12 months or the highest compensation year as determined for the purpose of calculating average final compensation, but excluding the final 12 months," Laws 1991, 313:1. *See Milette v. N.H. Retirement System*, 141 N.H. 342, 345 (1996) (discussing the 1991 amendment). Laws 1991, 313:7 further provided, in relevant part, that

> if the retiring member has received severance pay at termination and demonstrates to the satisfaction of the . . . board . . . that all or part of such severance pay was based on accrued holiday, vacation or sick time or other credits earned on account of service rendered before the effective date of this act, then such portion of the severance pay shall be exempt from the limitation on earnable compensation. In case of doubt as to the interpretation of service data in determining when credits were earned, the data shall be interpreted to the best interest of the retiring member.

Laws 1991, 313:7.

The petitioners retired early from Concord school district in 2003 and 2004. In accordance with the collective bargaining agreement (CBA), each received from the school district a "Separation Benefit," which was a cash payment for certain unused sick leave but is not at issue in this appeal. In addition to the separation benefit, the petitioners received an "Early Retirement Benefit" consisting of participation in the retiree health insurance plan and a "single cash payment" according to the retiree's age. After setting out the schedule of cash payments, the CBA provides, in relevant part:

F. To the extent the retiree has accumulated sick leave (prior to June 30, 1991) in excess of the amount paid in accordance with the [CBA] separation benefit, said sick leave shall be paid to the retiree at the retiree's present per diem and shall be applied to reduce by a maximum of up to fifty percent (50%) the retirement cash payment set out herein. However, the total cash incentive paid to the employee under this provision shall not exceed an amount equal to the employee's separation benefit plus the early retirement cash incentive paid herein.

Michael Martin, who was the assistant superintendent of finance for Concord school district when this provision became part of the CBA, testified before the hearings examiner that the early retirement provision was introduced in the 1992-93 CBA as a compromise measure in exchange for no teacher salary increase.

Each petitioner applied to the NHRS and qualified for a service retirement annuity. In calculating their average final compensation, the NHRS staff rejected their assertion that the early retirement benefits were exempt from the 150 percent cap on earnable compensation.

The petitioners appealed to the board. The board appointed a hearings examiner to conduct an evidentiary hearing, who found:

Beginning with the first retirees under the [CBA], NHRS employees questioned whether the [early retirement benefit] was a lump sum early retirement incentive . . . or whether it was an actual payment for pre-1991 sick leave . . . . To try to clarify the provisions [of the CBA], a meeting was held in late 1993 at the Retirement System between Michael Martin[,] Superintendent of the Concord School District, Dennis Murphy, lobbyist for NEA-NH, Maureen Kryger[, the benefits administrator,] and either Harry Descoteau, Executive Director or Maurice Daneault, Deputy Director . . . . As a result of this meeting, the Retirement System accepted the explanation of Dennis Murphy that the early retirement benefit included a payment for pre-1991 sick days and the parties worked out a way for the Concord School District to report the sick-leave payment part of the early retirement benefit. . . .

Until 2001, the Retirement System relied on the district to accurately and appropriately represent what the payment was and there was nothing in the forms that came in during those intervening years to make [it] think that [the early retirement benefit] was other than what they were representing. . . . Ms. Kryger[, however,] was troubled by . . . inconsistencies in the 2001

filings [of certain early retirement forms], refused to certify the benefits, and met with the new retirement system executive director, Eric Henry. Director Henry resolved the issue by having the Concord School District certify that the forms were correct under penalty of perjury and directing Ms. Kryger to certify the benefits. . . .

In 2003, the retirement system received a document from Concord that . . . laid out how the school district was paying the benefit for an individual. . . . As a result of this document, it became clear . . . that regardless of how many sick days an individual may have, they still received th[e same amount of early retirement incentive]. . . . Contrary to certifications from . . . [the school district], the member received a lump sum that was based on age and the amount of the early retirement incentive spelled out in the Master Agreement.

(Quotations omitted.)

The hearings examiner recommended affirming the NHRS staff's determination. The board accepted the recommendation. The petitioners unsuccessfully moved for reconsideration. We granted their petition for a writ of certiorari. The dispute concerns the characterization of their early retirement benefit because of its impact upon the amount of "[e]arnable compensation," RSA 100-A:1, XVII, factored into their retirement annuities.

The petitioners argue that: (1) the NHRS erred by rejecting their assertion that the early retirement benefits were based on unused, pre-1991 sick time; (2) the NHRS is collaterally estopped to make any such determination; (3) their contractual rights have been unconstitutionally impaired; and (4) their rights to equal protection have been violated.

■ Because RSA chapter 100-A does not provide for judicial review, a writ of certiorari is the sole remedy available to a party aggrieved by a decision of the board. *Milette*, 141 N.H. at 344. "The reviewing court will grant relief where the board of trustees has acted illegally with respect to jurisdiction, authority, or observance of the law, has abused its discretion, or has acted arbitrarily, unreasonably, or capriciously." *Id.*; *see Petition of Goffstown Educ. Support Staff*, 150 N.H. 795, 798 (2004). We consider the board's findings of fact "prima facie lawful and reasonable." RSA 541:13 (2007). The petitioners' burden is to demonstrate that the board's decision "is clearly unreasonable or unlawful." *Id.*

*I. Interpretation and Application of Laws 1991, 313:7*

Both parties agree that the threshold issue is whether the board correctly rejected the petitioners' assertion that payments were based on unused, pre-1991 sick time. The petitioners assert, and the NHRS does not dispute, that the plain meaning of "based on," Laws 1991, 313:7, means "having as its basis," and that the plain meaning of "basis" is "the base, foundation, or chief supporting factor." (Quotation omitted.) Accordingly, the instant dispute centers upon the application of this definition.

■ Laws 1991, 313:7 places the burden upon the retiring members to demonstrate that severance pay was based on unused, pre-1991 sick time. *See* Laws 1991, 313:7. Laws 1991, 313:7 further vests the NHRS with discretion to accept or reject the proffered explanation. *See id.* (stating that retiring member must "demonstrate[] to the satisfaction of the [board] that all or part of . . . severance pay was based on accrued holiday, vacation or sick time" before exemption from 150 percent cap applies). Given the evidence adduced by the hearings examiner, the petitioners have failed to demonstrate that the NHRS clearly exercised its discretion unreasonably or unlawfully.

The petitioners concede that teachers retiring early would receive "the same total amount in severance whether they had accumulated pre-1991 sick leave or not." Nevertheless, they argue that the school district intended for this compensation to be based on unused, pre-1991 sick time and computed their contributions to the NHRS accordingly.

The evidence before the hearings examiner indicated that the petitioners' early retirement benefits unexpectedly increased employer contribution rates. Maureen Kryger, who ensured for the NHRS that retirement annuities paid to retired employees were in line with employer contributions, testified that after the 150 percent cap was in place, employer contribution rates increased, that the actuary attributed this increase "to the severance payments that members were receiving, because ultimately it enhanced their pension benefit," and that "there was a great deal of discussion about it in the [NHRS] office with the actuary, even with the legislature at times." The need to increase employer contribution rates suggests that the school district, which presumably used sound accounting methods to determine its contributions to the NHRS, *see* N.H. CONST. pt. I, art. 36-a, had neither anticipated nor accounted for unused, pre-1991 sick time to be exempt from the 150 percent cap by virtue of the early retirement benefit.

Kryger also questioned the forms generated by the school district to report the early retirement benefit because early retirement incentives were generally "lump sum payment[s]" and were not expressed in terms of

days. She also found it "very unusual . . . to see[] sick leave paid at two different rates," one rate for unused, pre-1991 sick time and another for unused, post-1991 sick time.

Nancy Mahar, who served as payroll manager for the school district, refused to certify the early retirement benefit forms because, in her opinion, the figures were not properly reconciled. She testified that the school district failed to abide by the CBA's fifty percent cap on unused, pre-1991 sick time as part of the early retirement benefit. The NHRS, however, continued to accept as sufficient the school district's assurances, including sworn certification, that the early retirement benefits were based, at least in part, on unused, pre-1991 sick time.

In 2003, the NHRS looked anew at the early retirement benefit, in part because a document included within one petitioner's NHRS submission was prominently labeled, in bold print, "INTERNAL DOCUMENT — NOT FOR USE WITH NHRS!" The document explained how the individual payout was calculated and made it clear that the retiree's early retirement benefit remained the same regardless of the amount of her unused, pre-1991 sick time. Further investigation revealed to the NHRS that age was the only variable in the early retirement benefit calculation.

In this light, the NHRS rejected the petitioners' assertion that their early retirement benefit was based on unused, pre-1991 sick time, finding instead that the substance of the benefit controls its character, *see N.H. Division of Human Services v. Allard*, 141 N.H. 672, 675 (1997); *cf. Commissioner v. Hansen*, 360 U.S. 446, 461 (1959), not arbitrary labels attached by the CBA.

■ The petitioners contend that, to the extent doubt existed regarding whether the early retirement benefits were based on unused, pre-1991 sick time, this doubt should be resolved in their favor in accordance with Laws 1991, 313:7. We disagree. Laws 1991, 313:7 requires only doubts "as to the interpretation of service data in determining when credits were earned" be resolved in favor of the retirees. The NHRS does not dispute the amount of unused, pre-1991 sick time each petitioner has accrued. Accordingly, there is no doubt about the interpretation of their service data.

The petitioners also argue that roughly ten years of permitting early retirement benefits to be exempt from the cap amounts to an agency interpretation to which the NHRS is bound and to which this court must defer. *See Casale v. Pension Com., Etc., of Newark*, 187 A.2d 372 (N.J. Super. Ct. Law Div. 1963). We disagree. Laws 1991, 313:7 vests the NHRS with discretion to determine whether and to what extent the early retirement benefits were based on unused, pre-1991 sick time. Although we might agree that granting pensions could "amount to a prior administrative

construction which is entitled to great weight," any such construction could not prevail over "the plain meaning of the statute." *Casale*, 187 A.2d at 374.

Laws 1991, 313:7 plainly requires that each retiring member demonstrate "to the satisfaction of the . . . board" that compensation was based on unused, pre-1991 sick leave. This discretion necessarily contemplates that the NHRS may reach different outcomes under different circumstances. *Cf. Appeal of Public Serv. Co. of N.H.*, 141 N.H. 13, 22 (1996) (noting that an "[a]n administrative agency is not disqualified from changing its mind" (quotation and brackets omitted)); *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) (stating that administrative agencies may choose to formulate policy through adjudication). Under the circumstances of this case, the NHRS administered Laws 1991, 313:7 in accordance with its plain meaning by reasonably determining that the petitioners had presented insufficient evidence to sustain their contention. Likewise, we note that nothing herein prevents future retirees from asserting and attempting to demonstrate to the NHRS that compensation they received was based on unused, pre-1991 sick leave.

## II. Estoppel

The petitioners next argue that the NHRS is collaterally estopped from excluding the early retirement benefits from the 150 percent cap on earnable compensation given the result of the two meetings at which the early retirement benefits were discussed between representatives of the school district, NEA-New Hampshire and the NHRS.

■ "Findings by administrative agencies may be given preclusive effect." *Day v. N.H. Retirement System*, 138 N.H. 120, 122 (1993). The petitioners concede that the NHRS never litigated the issue at either meeting. Instead, they argue that the NHRS is estopped because it had the opportunity to litigate the matter but chose not to do so. We disagree. It is well established that "[c]ollateral estoppel may be invoked to preclude reconsideration of an issue only when the issue has been actually litigated." *M.A. Crowley Trucking v. Moyers*, 140 N.H. 190, 195 (1995); *see* RESTATEMENT (SECOND) OF JUDGMENTS § 27 comment e at 256 (1982). Accordingly, the NHRS did not act unlawfully in rejecting this argument because no estoppel effect attached by virtue of the two meetings.

## III. Contract Clause

The petitioners next argue that the NHRS has unconstitutionally "impair[ed] both the[ir] . . . fundamental right to contract with the [school district], and the State's own contractual obligations to [them]" in deroga-

tion of the State and Federal Contract Clauses. *See* U.S. CONST. art. I, § 10, cl. 1; N.H. CONST. pt. I, art. 23. We first address this claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only, *id.* at 232-33; *In re Grand Jury Subpoena (Issued July 10, 2006)*, 155 N.H. 557, 564 (2007).

■ Part I, Article 23 of the State Constitution prohibits retrospective laws "for the decision of civil causes," N.H. CONST. pt. I, art. 23. Though it does not expressly reference existing contracts, "we have held that its proscription duplicates the protections found in the contract clause of the United States Constitution." *State v. Fournier*, 158 N.H. 214, 221 (2009) (quotation omitted). The party asserting a Contract Clause violation must first demonstrate retroactive application of a law. *See id.*

The 150 percent cap within Laws 1991, chapter 313 does not operate upon the CBA's early retirement provision retroactively because it was enacted and became effective prior to inclusion of the early retirement provision within the 1992-93 CBA. *See* Laws 1991, 313:8 ("This act shall take effect June 30, 1991."); *Sexton Motors, Inc. v. Renault Northeast, Inc.*, 121 N.H. 460, 463 (1981). Although the NHRS applied the cap to the 2003 and 2004 early retirees well after the early retirement benefit became a feature of the 1992-93 CBA, the delegation of its administrative authority to do so preceded the 1992-93 CBA. *See* Laws 1991, 313:7, :8. This authority cannot be divested by private contracts to which the agency was not a party. *See Marathon Oil Co. v. United States*, 604 F. Supp. 1375, 1378-79 (D. Alaska 1985), *aff'd*, 807 F.2d 759 (9th Cir. 1986), *cert. denied*, 480 U.S. 940 (1987).

Because the State Constitution is at least as protective as its federal counterpart in this instance, *compare Fournier*, 158 N.H. at 221 (discussing requisites of a State Constitutional Contract Clause violation), *with AFSCME Local 818 v. City of Waterbury*, 389 F. Supp. 2d 431, 435 (D. Conn. 2005) (collecting federal case law regarding Federal Contract Clause, including requisites of a violation in context of union challenge to city's implementation of certain legislation affecting employee's vested benefits), *aff'd*, 198 Fed. Appx. 47 (2d Cir. 2006), *cert. denied*, 549 U.S. 1180 (2007), we reach the same result under the Federal Constitution as we do under the State Constitution.

## IV. Equal Protection

Finally, the petitioners argue that the NHRS has violated their State and Federal Constitutional rights to equal protection. *See* U.S. CONST. amend.

XIV, § 1; N.H. CONST. pt. I, arts. 2, 12. We first address this claim under the State Constitution, *Ball*, 124 N.H. at 231, and cite federal opinions for guidance only, *id.* at 232-33.

"[T]he equal protection guarantee is 'essentially a direction that all persons similarly situated should be treated alike.'" *In re Sandra H.*, 150 N.H. 634, 637 (2004) (quoting *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985)).

> In considering an equal protection challenge under our State Constitution, we must first determine the appropriate standard of review by examining the purpose and scope of the State-created classification and the individual rights affected. Classifications based upon suspect classes or affecting a fundamental right are subject to the most exacting scrutiny; to pass constitutional muster, they must be justified by a compelling governmental interest and must be necessary to the accomplishment of its legitimate purpose. Classifications involving important substantive rights . . . [receive an intermediate level of review]. We have applied this intermediate review to a broader category of rights than do the federal courts, although our analysis when applying this level of review is the same. Finally, absent some infringement of a fundamental right, an important substantive right, or application of some recognized suspect classification, the constitutional standard to be applied is that of rationality.

*Id.* at 637-38 (quotations and citations omitted).

The petitioners argue that they were treated differently from the teachers who retired early from 1993 to 2002, and whose unused, pre-1991 sick time was exempted from the 150 percent cap. The petitioners contend that this was an impermissible classification because they

> are similarly situated to the Concord teachers who took early retirement from 1993 through 2002 and who had pre-1991 service credit. Like those teachers, [they] had accumulated pre-1991 sick leave, were beneficiaries of the "grandfather" clause of the statute protecting that sick leave, and were promised by the [CBA] and by the prior actions of the [NHRS] that their sick leave benefit would be protected if they retired early.

Although this case does not implicate a suspect classification, we agree with the petitioners that the classification at issue does impact an important substantive right: that of eligible public employees to retirement benefits. *Cf. Spengler v. Porter*, 144 N.H. 163, 166 (1999) ("The right to use

and enjoy one's property is a fundamental right protected by both the State and Federal Constitutions."); *Lorette v. Peter-Sam Inv. Properties*, 140 N.H. 208, 211 (1995) (stating that right to recover for injuries is an important substantive right). We have concluded that "RSA ch[apter] 100-A provides all eligible governmental employees with an enforceable right to benefits." *State Employees' Ass'n of N.H. v. Belknap County*, 122 N.H. 614, 621 (1982). Retirement and related benefits under RSA chapter 100-A "constitute a substantial part of an employee's compensation" and "are essentially created for the protection of the employee and his family." *Id.*; *see Jeannont v. N.H. Personnel Comm'n*, 118 N.H. 597, 601-02 (1978) (recognizing that retirement and other benefits "can attract qualified persons to enter and remain in State employment"). Indeed, the determination and use of contributions to the NHRS enjoy State Constitutional protection. *See* N.H. CONST. pt. I, art. 36-a. As such, we believe such rights constitute important substantive rights.

Accordingly, we conduct an intermediate review of the agency action to determine whether it is "substantially related to an important governmental objective." *Cmty. Res. for Justice v. City of Manchester*, 154 N.H. 748, 762 (2007). The NHRS has the burden of demonstrating that the challenged action satisfies this test. *See id.* It "may not rely upon justifications that are hypothesized or 'invented *post hoc* in response to litigation,' nor upon 'overbroad generalizations.' " *Id.* (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)); *see Cmty. Res. for Justice v. City of Manchester*, 157 N.H. 152, 154 (2008).

The NHRS maintains that its action survives intermediate scrutiny because "[i]t was . . . necessary to the . . . state interests of (a) applying RSA 100-A:1, XVII to *all* present NHRS members in the manner intended by the Legislature, and (b) maintaining sound actuarial practices consistent with the fiduciary obligations of pension fund trustees." We agree.

■ As discussed above, the importance of providing eligible public employees with retirement benefits finds support in both our State Constitution and our jurisprudence. By attracting to public service and retaining qualified employees, RSA chapter 100-A "confers a significant benefit upon the general public." *Lorette*, 140 N.H. at 212. It follows, then, that the board has an important interest in properly administering RSA chapter 100-A, *see* RSA 100-A:14, II (2001), and faithfully discharging its fiduciary duties in the interest of all participants and beneficiaries, RSA 100-A:15, I-a(a)(1); *see* RSA 100-A:15, I (Supp. 2008).

The NHRS acted to substantially advance these important interests. Commissioning a hearings examiner and ultimately rejecting the petitioners' argument that their early retirement benefits were based on unused,

pre-1991 sick time had the effect of subjecting the benefits to the 150 percent cap on earnable compensation. Consistent with its statutory duties to properly administer RSA chapter 100-A in the interest of *all* eligible members, the NHRS thereby declined to award retirement benefits based upon compensation in excess of the 150 percent cap.

Because the State Constitution is at least as protective in this context as its federal counterpart, *see Engquist v. Oregon Dept. of Agriculture*, 128 S. Ct. 2146, 2153, 2155 (2008) (noting that Federal Equal Protection Clause requires rational justification of classification as to property and collecting cases of rational review in public employment context); *cf. Board of Regents v. Roth*, 408 U.S. 564, 576 (1972) (discussing public employment and benefits as property interests protected by Due Process Clause), we reach the same result under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.