Original
No. 2009-266

PETITION OF MICHAEL POULICAKOS
(New Hampshire Retirement System)

Argued: February 11, 2010
Opinion Issued: June 30, 2010

*Michael C. Reynolds*, general counsel, State Employees Association of New Hampshire, Inc., of Concord, on the brief and orally, for the petitioner.

*Foley Law Office*, of Concord (*Peter T. Foley* on the brief and orally), for the respondent.

HICKS, J. The petitioner, Michael Poulicakos, appeals a decision of the respondent, New Hampshire Retirement System (NHRS), denying him accidental disability retirement (ADR) benefits. We affirm.

The record supports the following facts. The petitioner was employed as a corrections officer by the State of New Hampshire Department of Corrections (DOC). As such, he was a group II member of NHRS. *See* RSA 100-A:1, VII, :1, X(b) (2001) (defining group II members to include permanent policemen, and permanent policemen to include certain corrections personnel). On June 30, 2006, the petitioner instituted a workers' compensation claim with the department of labor (DOL), describing his

injury as mental stress from his job. On August 2, 2006, he applied to NHRS for both ordinary disability retirement benefits and ADR benefits, describing the nature of his disability as psychological. The petitioner's application for ordinary disability retirement benefits was granted and is not at issue in this appeal. The workers' compensation and ADR claims proceeded concurrently before the DOL and NHRS.

The DOL held a hearing on the petitioner's workers' compensation claim and on November 14, 2006, awarded the petitioner compensation for temporary total disability. *See* RSA 282-A:28 (1999). The hearing officer found that "[t]he claimant suffered a life-changing incident on July 2, 1994 when he found an inmate hanging in her cell. . . . The claimant developed headaches, nightmares, and eventually developed a phobia against looking into cells when he was alone for fear of seeing something similar." The hearing officer concluded that "[t]he medical opinion which has been submitted is uncontroverted in that the claimant has a condition of PTSD [post-traumatic stress disorder] which arose out of and in the course of his employment as a corrections officer." The hearing officer noted, however, that cross-examination regarding the petitioner's medical history was "primarily speculative as the carrier had not seen fit to have a legitimate medical review."

The DOC filed a *de novo* appeal before the Compensation Appeals Board (CAB). The CAB reviewed three psychiatric experts' reports: the intake assessment of a doctor consulted by the petitioner, the independent psychiatric evaluation performed for the workers' compensation carrier, and the independent evaluation conducted for NHRS. The CAB acknowledged that the petitioner's doctor "reached a diagnosis of PTSD caused by the hanging incident," but noted that "[t]his was an intake assessment and does not contain the kind of detail an expert would develop if asked for a full opinion on causation." The two independent examiners, on the other hand, had concluded that the petitioner's disability was not caused by a work-related accident or injury. The CAB concluded that the petitioner "failed to carry his burden of proof that his stress injury was work-related." The CAB denied the petitioner's motion for reconsideration on October 17, 2007, and we summarily affirmed.

Meanwhile, the petitioner's ADR claim proceeded before NHRS. On January 9, 2007, a hearings examiner for NHRS recommended that the claim be denied, noting aspects of the petitioner's history that were inconsistent with his PTSD diagnosis. She further stated that she "d[id] not find the [DOL] findings of PTSD to be persuasive," and that such findings were not binding on NHRS. The NHRS board of trustees (board) voted to accept the hearings examiner's recommendation.

On the petitioner's motion for rehearing or reconsideration, the board again accepted the recommendation of the hearings examiner, who found that "[b]ecause the effective decision in the applicant's workers' compensation case is the New Hampshire Supreme Court's upholding of a denial of benefits by the [CAB], the applicant has failed to meet the 'finding of compensability' prerequisite to the filing of an ADR claim." The petitioner then sought a writ of certiorari from this court.

"Because RSA chapter 100-A does not provide for judicial review, a writ of certiorari is the sole remedy available to a party aggrieved by a decision of [NHRS]." *Petition of Concord Teachers*, 158 N.H. 529, 533 (2009). "Our standard of review is whether the board acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a conclusion which cannot legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously." *Petition of Farmington Teachers Assoc.*, 158 N.H. 453, 455 (2009) (quotation omitted).

The petitioner presents a single question:

> Is a [DOL] decision on causation pursuant to RSA 281-A:43, binding on [NHRS] on the issue of causation pursuant to RSA 100-A:6, II(c) (1)-(3), even if that DOL Hearing Officer decision is overturned on appeal to the NH Compensation Appeals Board (CAB) and to the NH Supreme Court?

Resolving this question requires that we interpret the relevant statute, which presents a question of law that we review *de novo. Petition of Farmington Teachers*, 158 N.H. at 456.

> When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. We interpret a statute in the context of the overall statutory scheme and not in isolation.

*Id.* (quotations and citation omitted).

RSA 100-A:6, II provides, in part:

> (c)(1) Upon the application of a group II member in service or of the member's employer, any member shall be retired by the board of trustees on an accidental disability retirement allowance where the member has been totally and permanently incapacitated for duty as the natural and proximate result of either:

(A) An accident occurring while in the actual performance of duty at some definite time and place; or

(B) Repeated trauma or gradual degeneration occurring while in the actual performance of duty, or arising out of and in the course of employment; or

(C) Any occupational disease arising out of or in the course of employment as defined by RSA 281-A:2, XI, RSA 281-A:2, XIII, or RSA 281-A:17.

(2) The provisions of subparagraph (c)(1) shall apply provided that:

(A) The member is found to be mentally or physically incapacitated for the further performance of duty and that such incapacity is likely to be permanent;

(B) The member did not intend for injury to result from the member's conduct; and

(C) The incapacitating accident, trauma, degeneration, or occupational disease has been found to be compensable by the employer, the employer's insurance carrier, or the commissioner of labor pursuant to RSA 281-A:43.

(3) The member applying pursuant to subparagraph (c)(1) shall have the burden of proving causation before the board of trustees if the member enters into a lump sum settlement of an injury claim that was at any time denied by the employer or the employer's insurance carrier and not found compensable by final decision of the labor commissioner or the compensation appeals board after hearing pursuant to RSA 281-A:43. In the case of any lump sum settlement, the board of trustees shall require the member seeking disability retirement benefits to prove by a preponderance of the evidence the existence of a work-related injury of the type described in subparagraph (c)(1)(A)-(C), and also that the work-related injury naturally and proximately resulted in the member's total and permanent incapacity from duty. If the board of trustees is unable to grant disability retirement benefits after review of medical and factual information submitted by the member and by a physician designated by the board, then the member shall be entitled to a hearing before the board in order to determine whether the member qualifies for disability retirement benefits.

RSA 100-A:6, II(c) (Supp. 2009).

The petitioner contends that under RSA 100-A:6, II(c)RSA 100-A:6, II(c), NHRS is bound by the DOL hearing officer's November 14, 2006 decision finding his condition to be work-related and compensable. He argues that the requirement in RSA 100-A:6, II(c)(2)(C) that the disabling condition "has been found to be compensable by the employer, the employer's insurance carrier, or the commissioner of labor pursuant to RSA 281-A:43" requires only a single finding of compensability at any level in the DOL proceedings, regardless of the ultimate conclusion on compensability determined on the final appeal. The petitioner argues that while the hearing officer's finding of compensability in this case was not final, "there is absolutely no . . . requirement in RSA 100-A:6, II(c)(2)(C)" that a DOL finding of compensability survive an administrative appeal.

Our task is to determine what the legislature meant by the language, "found to be compensable by . . . the commissioner of labor," in RSA 100-A:6, II(c)(2)(C). *See Pandora Indus., Inc. v. State Dep't of Revenue Ad.*, 118 N.H. 891, 894 (1978). That language itself does not indicate whether the finding must be final or, as argued by the petitioner, may be an intermediate finding later overturned on appeal. "We must therefore look to the statute as a whole in order to determine the intent of the legislature in this regard." *N. E. Brickmaster v. Town of Salem*, 133 N.H. 655, 660 (1990), *superseded by statute on other grounds*.

As a whole, RSA 100-A:6, II evinces the intent to provide an ADR allowance to any group II member who "has been totally and permanently incapacitated for duty as the natural and proximate result of either" an on-duty accident or work-related trauma, degeneration or occupational disease. RSA 100-A:6, II(c)(1); *see Petition of Bailey*, 146 N.H. 197, 199 (2001) (noting that the plain language of the comparable provision for group I employees "requires that the member's total and permanent incapacity be caused by the work-related injury"). The provisions of section II(c)(2) detail how the requirements for the award of an ADR allowance are met. Thus, section II(c)(2), subpart (A) requires a finding of permanent incapacity for duty, subpart (B) excludes intentional injuries, and subpart (C) requires that the incapacitating condition be found compensable for purposes of workers' compensation. RSA 100-A:6, II(c)(2). Viewed in context, the finding of compensability required under subpart (C) serves as a proxy for the determination required under RSA 100-A:6, II(c)(1) "that the member's total and permanent incapacity be caused by a work-related injury." *Petition of Bailey*, 146 N.H. at 199 (discussing comparable provision in RSA 100-A:6, I(c)).

We conclude that to give effect to the legislature's intent that only disabilities caused by work-related injuries qualify for an ADR allowance, the language "found to be compensable by . . . the commissioner of labor," RSA 100-A:6, II(c)(2)(C), must be read to refer to a final finding, undisturbed by a subsequent appeal. We acknowledge that such an interpretation reads the word "final" into the statute, a result we generally avoid. *See Petition of Farmington Teachers*, 158 N.H. at 456 (when interpreting a statute we will not add language the legislature did not include). Nevertheless, while "[w]e cannot redraft a statute to make it conform to an intention not fairly expressed in its language," *Blanchard v. Blanchard*, 133 N.H. 427, 431 (1990) (quotation omitted), "when the intention of the Legislature can be ascertained from the statute, words may be modified, altered, or supplied so as to compel conformity of the statute to that intention," *State Employees Assoc. of N.H. v. N.H. Div. of Personnel*, 158 N.H. 338, 346 (2009) (quotation and brackets omitted). *Cf.* RSA 21:1 (2000) (setting forth rules to be followed in the "construction of all statutes . . . unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the same statute"). We also bear in mind the "fundamental" principle that "whenever possible, a statute will not be construed so as to lead to . . . absurd consequences." *In re Moore*, 99 N.H. 209, 211 (1954). Thus, "as between a reasonable and unreasonable meaning of the language used, the reasonable meaning is to be adopted." *Trustees &c. Academy v. Exeter*, 92 N.H. 473, 478 (1943). The petitioner's interpretation, treating as controlling for purposes of RSA 100-A:6 an overturned DOL determination of compensability, is contrary to the legislative purpose expressed in RSA 100-A:6, II(c), and we agree with NHRS that it "could not in any way have been within the intention of the legislature when enacting" that statute.

The petitioner argues, to the contrary, that NHRS's interpretation produces an absurd result in that "many *approved* accidental disability retirement applicants, who have presumably proven their case at the NHRS, would *never* be able to assume their disability determination was permanent." He contends that "[t]he legislature could very well have, and apparently did, intend that accidental disability retirement applicants not have to keep fighting over causation at the DOL." We need not determine for purposes of this appeal the precise extent to which subsequent reviews of workers' compensation awards, *see e.g.*, RSA 281-A:48 (1999) (providing for review of eligibility for compensation), may affect ADR status. We need only note that such policy determinations are for the legislature.

The petitioner further argues that an interpretation that requires the finding of compensability referred to in RSA 100-A:6, II(c)(2) to be a final

determination renders RSA 100-A:6, II(c)(3), dealing with lump sum settlements, superfluous. He points to the use of the phrase "final decision" in RSA 100-A:6, II(c)(3), and argues that "[t]here would be absolutely no need for this language if a *final* finding of compensability was already required in the threshold section, 100-A:[6], II(c)(2)(C)." We disagree. RSA 100-A:6, II(c)(3) applies to certain claimants who have entered into lump sum settlements and who are not covered under paragraph II(c)(2)(C) specifically because they lack the final finding of compensability by the DOL that serves as a proxy for such a finding by NHRS. Under RSA 100-A:6, II(c)(3), such claimants may still be granted an ADR if the claimant satisfies his burden of proving causation before NHRS. Because RSA 100-A:6, II(c)(3) has independent applicability, it is not superfluous to RSA 100-A:6, II(c)(2)(C).

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and CONBOY, JJ., concurred.